NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**


CHARLES MERRITT,                  :
                                  :
            Petitioner,           :        Civil No. 11-3756 (JAP)
                                  :
      v.                          :        **OPINION**
                                  :
GREG BARTKOWSKI, et al.,          :
                                  :
            Respondents.          :


**APPEARANCES:**

**CHARLES MERRITT**, Petitioner *pro se*
306635/693799-B
Southwoods State Prison
215 S. Burlington Road
Bridgeton, N.J. 08302

**MARY ELIZABETH SPARKMAN**, Counsel for Respondents
Mercer County Prosecutors' Office
Mercer County Courthouse
P.O. Box 8068
Trenton, N.J. 08650

**PISANO**, District Judge:

Petitioner Charles Merritt ("Petitioner"), a prisoner currently confined at South Woods

State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. The respondent is Greg Bartkowski. For the reasons stated

herein, the petition will be denied.[1]

---

[1] To the extent that Petitioner's claims are unexhausted, this Court will deny them on the merits
pursuant to 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on
the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the
courts of the State"). *See Carrascosa v. McGuire*, 520 F.3d 249, 255 n. 10 (3d Cir. 2008) ("There
is, however, a difference between granting an unexhausted habeas claim on the merits and denying
such a claim on the merits, as recognized by the plain language of section 2254(b)(2) .... Denying

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will simply reproduce the recitation of facts as set forth by Superior Court of New Jersey, Appellate Division on direct appeal:

> Defendant was convicted of the attempted murder of Matthew Campbell, Besham Henderson, Lamont Henderson and Dora McRae. He was also convicted of aggravated assault by attempting to cause serious bodily injury and by pointing "a handgun and a sawed-off shotgun" at the aforementioned victims, as well as George Henderson, Sallie Henderson and Jerome Campbell.
>
> The proofs at the trial reflect the following: On February 21, 1996, a fight occurred between defendant and his brother William and Besham Henderson. The dispute involved a debt Besham's friend, Tia Womack, owed to defendant's brother and some damage the brother allegedly caused to Tia's car. At approximately 1:00 am on February 23, 1996 Henderson's car was discovered with broken windows and slashed tires. Everyone from the Henderson home went outside to observe the damage to the car. Some neighbors from the Campbell family also came out to see the damage.
>
> At approximately 1:15 a.m., Besham noticed a group of about ten people walking towards the Henderson house. Suspecting that it was the group responsible for the damage, Besham notified everyone that "they are coming back." Henderson's aunt, Dora McRae, noticed two men leading the group and heard the taller of the two state that "it was all over now." The speaker was observed by the aunt as having two or three gold teeth and carrying a silver gun. Defendant has gold teeth. Shots were fired as the group reached the Henderson home, causing the bystanders to scramble for safety. Bullets began to fly and struck the brick facade of the house, at which time the family dog was hit and injured.

---

an unexhausted claim on the merits is consistent with the statute"); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Matthew Campbell, a neighbor, testified that he recognized both defendant and his brother as the shooters and that defendant fired a shot that hit the step on which Campbell was standing. Campbell knew the defendant "by face" and "had seen him-around the area." He saw defendant shoot the handgun and his brother fire the shotgun.

The police responded to a call to the scene. Patrolman Charles M. Nemes surveyed the Henderson home for damage. He observed shotgun projectiles on the Henderson porch, a smashed front window pane and a bullet lodged in the brick right next to the front door. Patrolman Nemes called Detective Richard Osvai of the Trenton Police Department to examine and collect evidence. Afterwards, he returned to his patrol vehicle to search the area for a gray Honda used in the escape.

Detective Osvai arrived at the Henderson home at approximately 2:00 a.m. and began to photograph the damage and collect the evidence from the scene. Detective David Maldonado, of the Violent Crimes Unit, also arrived at the Henderson home to interview the victims and take statements. Shortly thereafter, Nemes observed a car matching the description of the Honda vehicle and stopped it. With the aid of a flashlight, he noticed a handgun inside a hat on a seat. He directed the driver to exit, frisked him, and "found a shotgun shell in his front right pocket." The driver was defendant's brother, William. Detective Maldonado responded to the scene.

After arresting William and advising him of his rights, Detective Maldonado interrogated him. During the interview, William informed the detective that the incident was "to get back at or to retaliate against the individuals" at the Henderson's address who had damaged the car of defendant's girlfriend, a white Saab, "about two hours prior to the shooting." William also admitted to being involved in the fight that had occurred the day before between him, defendant and Besham Henderson. Moreover, William admitted firing the shotgun and agreed to help locate it. During his statement, William also implicated Shaun Paul as the one who shot the revolver and other members of the group involved in the incident. He did not include defendant.

Detective Maldonado and Detective Osvai accompanied William to retrieve the shotgun. As the two detectives retrieved the shotgun, William managed to escape from the vehicle. Several hours later, he returned to the Trenton Police Station accompanied by an attorney.

On March 4, 1996, Detective Maldonado learned that defendant was confined in the Gloucester County Jail. Maldonado traveled there and brought defendant back to Trenton. Although Merritt refused to sign a waiver of rights form, Maldonado testified that he voluntarily waived his rights and denied any involvement in the February 23rd shooting. He also told Maldonado that he lived with Felonda Spears. When the detective asked whether Ms. Spears owned a white Saab that had

its windows smashed, defendant replied that she did not own such a vehicle. When confronted with proof that Ms. Spears did in fact own a white Saab, "Mr. Merritt then declined to answer any other questions" and the interview was "terminated."

Ms. Spears testified that the Saab belonged to defendant but "was given to [her] for transportation for the[ir] kids." She never saw any damage to the car, but heard it suffered damage and so advised Maldonado when interviewed by him.

*State of New Jersey v. Merritt*, A-2648-98T4 (N.J. Super. Ct. App. Div. Sept. 28, 2000).

Petitioner was convicted of four counts of attempted murder, N.J.S.A. 2C: 11-3, 2C:5-2, 2C:2-6; seven counts of second degree aggravated assault, N.J.S.A. 2C:12-lb(l), and seven counts of fourth degree aggravated assault, N.J.S.A. 2C:12-lb(4), 2C:2-6. *Id.* He was found not guilty of possession of a handgun and sawed-off shotgun for unlawful purpose, possession of a handgun without a permit, possession of a sawed off shotgun and criminal mischief. *Id.* After merging some of the offenses, Petitioner was sentenced to fifty years, with twenty years to be served without parole eligibility on one of the convictions for attempted murder. *Id.* Concurrent sentences were imposed for the other convictions. *Id.*

On appeal, the Appellate Division affirmed the conviction and sentence, *id.,* and the New Jersey Supreme Court denied certification, *State v. Merritt*, 769 A.2d 1051 (N.J. 2001). On May 2, 2001, Petitioner filed a Pro Se Petition for Post-Conviction Relief ("PCR"), which was denied by the trial court. *State of New Jersey v. Merritt*, 96-0221-03 (N.J. Super. Ct. Law Div. Nov. 28, 2006). The Appellate Division affirmed the denial, *State v. Merritt*, 2010 WL 5420149 (N.J. Super. Ct. App. Div. Apr. 6, 2010), and the New Jersey Supreme Court denied certification, *State v. Merritt*, 999 A.2d 464 (N.J. 2010). Petitioner filed a second PCR petition on February 10, 2011, which was denied on October 17, 2011 by the trial court. *State of New Jersey v. Merritt*, 96-07-0794 (N.J. Super. Ct. Law Div. Oct. 17, 2011). The Appellate Division affirmed the denial

on May 6, 2013.  *State v. Merritt*, 2013 WL 1858865 (N.J. Super. App. Div. May 6, 2013).

On June 23, 2011, Petitioner submitted his original habeas petition to this Court.  (ECF No. 1.)   In response to this Court's notice pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), Petitioner submitted an amended petition on August 26, 2011.   (ECF No. 6.)   On March 18, 2012, Respondent filed his answer (ECF No. 24) and on February 19, 2013, Petitioner filed his amended reply (ECF No. 66).

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....

28 U.S.C. § 2254.

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v.*

*Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.* A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits.[2] *See* 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA ... do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362,

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Cullen*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). *See also Johnson v. Williams*, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013) ("[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

6

412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quoting *Williams* at 410). As the Supreme Court explains,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S.Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden

of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.*

**B. Analysis**

**1. Miranda Violation (Ground One)**

In his first ground for relief, Petitioner argues that Detective Maldonado violated his right to remain silent when he continued to question Petitioner after he had requested an attorney. Petitioner states that he did not convey any information during the interrogation, nor did he sign any papers or waiver form.

The admissibility of Petitioner's statements was initially addressed at a *Miranda* hearing in state court, where the court found:

> In this case, I find that the credible testimony is that the rights form was utilized. It was read to defendant. He indicated that he understood it when asked if he did, but he refused to sign it.
>
> * * * *
>
> Now, the Court is required in these cases to look at the totality of circumstances. It seems to me, and I do find as a result, that there was a refusal to sign the form; however, there was a *Miranda* given, the warnings; that there was a, in effect, a waiver by a speaking to a certain extent, and then, of course, there came a time when there was -- I'm not going to answer any more questions. The way that plays out smacks of truth to me, as I hear it, and the interview ended when the defendant indicated he was not going to answer any more questions for whatever reasons that he had at that time for doing so.
>
> The Court is further mindful of the questions that were, in fact, asked and answered. The defendant admitted having a girlfriend and her name. He denied any involvement in the criminal acts that are the subject of his indictment and trial. He denied the other aspects, and when confronted with some alleged evidence -- I haven't seen it, but I just heard the testimony, and I do find it to be credible up to this point -- that would have, in a sense, attacked his credibility on one of the answers, he just said he wasn't going to answer any more. That is his right. That was what advised under *Miranda*. He has a right to stop, and he did. I find that to be a credible circumstance. The interview was over.

The law says that you don't have to have a written waiver in order for a statement that is voluntarily given to be admissible.

In *State v. Warmbrun*, 277 N.J. Super. 51, [61-64 (App. Div. 1994) certif. denied, 140 N.J. 277 (1995)], the Court dealt with a situation much like the one in this particular situation. The Appellate Division agreed with the lower court, which found that the defendant's refusal to sign, in that case, a waiver card was not an assertion of the right to remain silent; therefore, the Court ruled that the statements were admissible finding defendant understood what was happening.

I make that finding here. He understood his rights. He decided nonetheless, to answer some questions, and when he got a question he didn't want to answer, he stopped.

* * * *

I find that these are supported by the adequate and credible evidence of Officer Maldonado as well as the forms that were produced in court during the hearing. The significant evidence is largely testimonial. It is all testimonial. I've had the opportunity to observe the witness and determine credibility. *Miranda*, as I said, does not require a written form or even a written waiver, but it is obviously what is used for the, apparently, ease of proofs. (2T6-21 to 9-13.)

(Resp't's App., Ex. R8, State's Direct Appeal Br. 25-27.)

Petitioner raised this issue on direct appeal, where it was denied by the Appellate Division:

"[w]e note, with respect to defendant's oral statement to Detective Maldonado, that there appears no prejudice flowing from his denial of involvement in the shootings even though the references to his relationship to the Saab automobile and termination of the interview could be deemed incriminatory in light of the motive." *State of New Jersey v. Merritt*, A-2648-98T4 (N.J. Super. Ct. App. Div. Sept. 28, 2000).

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In *Miranda v. Arizona*, 384 U.S. 436, 86

S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court held that "without proper safeguards the process of in-custody interrogation ... contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. In other words, there is no doubt that, when police ask questions of a suspect in custody, and that suspect was never administered the required warning, *Miranda* dictates that self-incriminating, inculpatory statements made by the suspect are presumed compelled and they are excluded from evidence at trial in the State's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 317, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Hence, a confession taken during a custodial interrogation without any *Miranda* warning facially violates the privilege against self-incrimination. *See Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

Conversely, a waiver of the right to remain silent renders self-incriminating, inculpatory statements admissible, and such waiver may be made orally, in writing or even implied by the interrogated person's conduct. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *United States v. Cruz*, 910 F.2d 1072, 1080 (3d Cir. 1990). Correspondingly, a trial court can properly admit a defendant's self-incriminating, inculpatory custodial statements if the court finds that the government met its preponderance-of-the-evidence burden of showing that the statements were made with a valid oral, written or manifested-by-conduct waiver. *See Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The question of whether the waiver at issue was "valid" is, invariably, resolved on a case-by-case basis. This is so because, under *Miranda*, a waiver is valid if it is made "voluntarily,

knowingly and intelligently." *Miranda*, 384 U.S. at 475. In determining whether there has been a valid waiver of *Miranda* rights, a court must conduct a two-part inquiry ensuing from the "totality of the circumstances" test. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). First, the court looks to the voluntariness of the waiver statement (or of the implied waiver, that is, if the waiver ensued from the suspect's conduct, which conduct might be the suspect's very rendition of the self-incriminating, inculpatory statement at issue) in order to determine whether the waiver was made "freely," as opposed to being obtained by coercion. *See id.* Second, the court must consider whether the waiver statement (or the implied waiver, if the waiver ensued from the suspect's conduct) was made "knowingly and intelligently," in the sense that the accused was fully aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

In conducting the aforesaid analysis, the court must take into account "both the characteristics of the accused and the details of the interrogation," *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), by evaluating the subject's age, education, experience, background, and intelligence, as well as the capacity to understand the warnings given, the length of detention, the nature of questioning, the use of physical punishment, if any (such as prolonged deprivation of food, water, sleep, access to toilet facilities). *See id.*; *see also Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). In addition, the "totality of circumstances" approach directs the court to be mindful of the subject's familiarity with the criminal justice system, the timing of the *Miranda* warnings and the statement given. *See United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir.1989). *See also Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140,

158 L.Ed.2d 938 (2004).

In this case, the state courts properly applied the relevant Supreme Court precedent and found that Petitioner's rights had not been violated. The trial judge reviewed and considered Petitioner's and the police's actions under *Miranda* and found that Petitioner understood his rights and decided to answer some of the detective's questions. When he wanted to invoke his *Miranda* right, he did so and the interrogation ceased. Moreover, as discussed by the Appellate Division on direct appeal, the information given to police by Petitioner during the questioning does not appear to have been prejudicial. This Court finds that the state courts' adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## 2. Inconsistent Verdicts (Ground Two)

In his second ground for relief, Petitioner argues that the guilty verdicts of attempted murder and aggravated assault were logically inconsistent with the acquittal of possession and use of a weapon, since the state must prove that Petitioner possessed and used a weapon during those offenses.

Petitioner raised this issue in a post-trial motion for judgment notwithstanding the verdict.

Since at first blush you would say, well, that appears to be inconsistent verdicts, but the standard that has to be applied pursuant to the Rule 3:18-2 by the trial court in deciding a motion for judgment of acquittal after a jury returns a verdict of guilty is, whether the evidence, viewed in its entirety, whether it be direct or circumstantial evidence, and giving the State the benefit of all of its favorable inferences which could reasonably be drawn from that evidence, whether that evidence is sufficient to enable a jury to find that the State has proven its charges that were resulting in convictions, were they established beyond a reasonable doubt.

* * *

Now, the law with respect to inconsistent verdicts has been fairly well established and is clear. The United States Supreme Court in *U.S. v. Powell*, 1984 case, at 469 United States 57, or 105 Supreme Court 471, held that inconsistent verdicts on separate counts in an Indictment do not vitiate otherwise lawful convictions. The reasoning behind this is that a jury which might otherwise return a guilty verdict on one count, may also acquit for reasons that have nothing to do with logical consistency among the various charges. Jurors may acquit for reasons of checking arbitrary government powers. They may lean towards leniency to a defendant, they may make a mistake. Or they may, through jury nullification, become involved with inconsistent verdicts. The Supreme Court of New Jersey accepted that reasoning and the decision of the United States Supreme Court in *Powell* as a matter of constitutional law in the Supreme Court decision of *State versus Ingenito* 87 N.J. 204, and *State versus Crisantos*. *Ingenito* being cited in 1981. *Crisantos* in 1986.

The inquiry into a verdict which seems inconsistent on its face is limited to whether the counts of which the defendant was convicted were supported by sufficient evidence to permit a rational fact-finder to find the defendant guilty beyond a reasonable doubt. *State versus Peterson*, 181 New Jersey Super 261 at page 265 (Appellate Division 1981) Certification denied, 89 New Jersey 413, 1982. A conviction supported by sufficient evidence will not be vacated unless an acquittal on one count precludes the finding of one or more elements of an offense charged in the second count as a party of law. Citing *Peterson* 181 New Jersey Super at 266. Now, in the case at bar, *State versus Charles Merritt*, the evidence presented at trial, I find, was such that a jury could have found beyond reasonable doubt that the defendant committed the offenses of attempted murder and aggravated assault with weapons. B[a]sham Henderson testified that he thought certain people who were approaching him on the street were there to retaliate against him. This was evidence by his statement, "Mom, they're coming back." and the people coming down the street were witnesses. According to William Merritt, the group which included Charles Merritt did in fact intend to shoot at the Henderson home and the people there. Moreover, eyewitness Matthew Campbell indicated it was Charles Merritt who pointed a firearm directly at him and fired.

Finally, the physical evidence at the scene demonstrated rather clearly to the jury and to this Court that bullets fired from the gun struck places on the home where all of the victims were standing at one point near the porch in the front of the house.

The State's position is that it was not required to prove that all of the possessory weapons offenses were needed in order to establish the assault or attempted murder charges as there are not elements of either of these offenses. The State's argument, I find, is supported by *State versus Ortiz*, 253 N.J. Super. 239, *certif. denied*, 130 N.J. 6 (1992). Defendant there was acquitted of possession of CDS, but found

guilty of distribution of controlled dangerous substance and distribution within one thousand feet of a school property, and conspiracy to distribute CDS. As is demonstrated by that case, a defendant can be found guilty of substantive offenses which include the possession of some object, and still be acquitted on separate and distinct possessory offenses.

(Resp't's App., Ex. R6, Sentencing Tr. 17:25-21:21). On direct appeal, the Appellate Division found that this issue was without merit and did not warrant a written discussion.

Generally, inconsistent verdict claims are not cognizable on federal habeas review in the absence of conviction of two offenses that are mutually exclusive. *United States v. Powell*, 469 U.S. 57, 69 n. 8, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Buehl v. Vaughn*, 166 F.3d 163, 178–79 (3d Cir. 1999); *Laird v. Horn*, 159 F.Supp.2d 58 (E.D.Pa. 2001). The Supreme Court has long held that "[c]onsistency in the verdict is not necessary." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Powell*, 469 U.S. at 62. So long as there is sufficient evidence to sustain the conviction for the charge of which the petitioner has been found guilty, a reviewing court will not disturb the conviction. *Id.*

The Third Circuit likewise ruled that "[w]here different offenses are charged in separate counts of a single indictment, an acquittal on one or more of the counts does not invalidate a verdict of guilty on another even where the same evidence is offered in support of each count." *United States v. Vastine*, 363 F.2d 853, 854 (3d Cir. 1966) (citing *Dunn*, 284 U.S. at 390). *Dunn* explains that "the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Dunn*, 284 U.S. at 393. *See also Powell*, 469 U.S. at 65("[i]nconsistent verdicts-even verdicts that acquit on a predicate offense

while convicting on the compound offense-should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.").

As discussed above, the state trial court and the Appellate Division concluded that the evidence produced at trial was such that a jury could have found beyond reasonable doubt that Petitioner committed the offenses of attempted murder and aggravated assault with weapons. Therefore, the verdicts were not necessarily inconsistent, and were based on sufficient evidence. In light of the state court's factual determination that the evidence produced at trial was such that a jury could have found beyond reasonable doubt that Petitioner committed the offenses of attempted murder and aggravated assault with weapons, as set forth above, and given the established federal law regarding inconsistent verdicts, this Court finds no constitutional basis to disturb the state court conviction. Petitioner has not shown a deprivation of a constitutional right, an unreasonable application of federal law by the state court, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, as required to grant habeas relief pursuant to 28 U.S.C. § 2254(d). Accordingly, the petition for a writ of habeas corpus will be denied on this ground.

## 3.   State Evidentiary Rulings (Grounds Three and Six)

Petitioner argues that it was a violation of his right to a fair trial when the trial court allowed testimony regarding a prior incident of violence that occurred between Petitioner and one of the victims, Besham Henderson. Petitioner also argues that it was an error for the state court to require Petitioner to show his teeth to the jury when the perpetrator of the crime had been

identified as having gold teeth and Petitioner also had gold teeth. Petitioner raised these issues on direct appeal and the Appellate Division found that the issues were without merit and did not warrant a written discussion.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 680 (1990))). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Estelle*, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial' ") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Here, the state courts have determined that there were no evidentiary errors under state law. Nor did the evidentiary decisions challenged here deprive Petitioner of a fundamentally fair trial. The evidence of the previous fight was probative of Petitioner's motive for committing the attempted murder and assault. Moreover, whether Petitioner had gold teeth was relevant as the perpetrator had been described as having gold teeth. The decisions of the state courts are neither contrary to nor an unreasonable application of Supreme Court law. Petitioner is not entitled to relief on these claims.

**4. Ineffective Assistance of Counsel**

Petitioner raises many ineffective assistance of counsel claims in his petition, some of which are duplicative. Specifically, Petitioner alleges that trial and appellate counsel were ineffective in the following ways:

- Trial counsel informed the jury that Petitioner's brother would testify, but then he subsequently did not testify (Grounds Four and Eleven)
- Trial counsel failed to "present exculpatory witnesses, bring exculpatory facts to the attention of the jury, and object to obviously inflammatory and irrelevant testimony" (Ground Seven)
- Trial counsel failed to properly cross-examine the State's witnesses; refused to permit Petitioner to testify; failed to object to an emotional statement by the prosecutor; failed to present a viable defense during summation; and failed to move to dismiss the indictment prior to trial (Ground Eight Eleven, Fifteen, Sixteen, Twenty-One)
- Appellate counsel failed to raise the errors noted by Petitioner in his petition (Ground Thirteen)
- Cummulative errors by both counsel denied Petitioner his right to a fair trial (Ground Fourteen)
- Trial counsel failed to object to inconsistent statements by the prosecution in their opening and closing statements; *Wade* hearing was denied due to trial counsel's lack of preparedness; trial counsel failed to inform the court that Petitioner had written to the Ethics Committee; Appellate attorney failed to raise on appeal the denial of the *Wade* hearing; Appellate counsel failed to raise on appeal the enhanced sentence was imposed both as a persistent offender and under the Graves Act which was illegal; Appellate counsel failed to raise on appeal the *Apprendi v. New Jersey* violation; Appellate counsel failed to raise on appeal the purpose element in relation to the substantive offenses are inconsistent with the state's theory of possession of a weapon for unlawful purpose; Appellate counsel failed to raise on appeal the fourth degree aggravated assault should have merged with the second degree aggravated assault (Ground Twenty)
- Trial counsel failed to object to the testimony of Matthew Campbell based on the fact that it was not included in discovery and appellate counsel failed to raise same on appeal (Grounds Twenty-Three, Thirty-Two, Thirty-Six)
- Appellate counsel was ineffective for failing to raise on appeal the issue of the trial court refusing to allow the jury access to Matthew Campbell's taped statement (Ground Thirty-Five)
- Trial counsel failed to move to suppress statements made by Petitioner's brother and the bullet fragment removed from the wooden stairs (Ground Twenty-Four)
- Trial counsel did not conduct a "focused" cross-examination of several

witnesses; did not object to irrelevant and prejudicial evidence; and failed to present a cohesive summation (Ground Twenty-Six)

- Trial counsel failed to object to obviously inflammatory and irrelevant testimony by Matthew Campbell (Ground Twenty-Eight)
- Appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to make the appropriate motions regarding Matthew Campbell's testimony (Ground Thirty-Seven)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)(citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances

at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding'...Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011)(citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The *Strickland* test for effective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). According to *Smith*

*v. Robbins*, 528 U.S. 259 (2000), when the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first *Strickland* prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably] nonfrivolous issues and to file a merits brief raising them." 528 U.S. at 285. An arguably nonfrivolous issue is "one that counsel can argue in good faith with some potential for prevailing." *Id.*

Petitioner raised his ineffective assistance of counsel claims in his PCR petitions, all of which were denied by the state courts. With regard to the testimony of Petitioner's brother, the state court found that trial counsel's decision not to call William Merritt was a strategic decision, specifically made after hearing the testimony of Felonda Spears and did not rise to the level of a serious professional error under the first prong of *Strickland*. *State of New Jersey v. Merritt*, 96-0221-03 (N.J. Super. Ct. Law Div. Nov. 28, 2006). The Appellate Division found that Petitioner's argument that his trial counsel was ineffective for failing to cross-examine Matthew Campbell with respect to alleged inconsistencies between Mr. Campbell's courtroom testimony and a formal statement he had given to police was belied by the record and that Mr. Campbell's potential bias was exposed when he conceded a six-year friendship with Henderson. *State v. Merritt*, 2010 WL 5420149, at * 4 (N.J. Super. Ct. App. Div. Apr. 06, 2010).

The state court also found Petitioner's claim that counsel was ineffective for refusing to permit him to testify to be contradicted by the record. Specifically, the trial court asked counsel, in Petitioner's presence, if the issue of Petitioner testifying or not had been discussed between Petitioner and counsel, and counsel advised the Court that she had the opportunity to speak with Petitioner at length about testifying in his own defense and that Petitioner had indicated to her that

he does not wish to testify.  *State of New Jersey v. Merritt*, 96-0221-03 (N.J. Super. Ct. Law Div. Nov. 28, 2006).  Petitioner did not object to counsel's representations.  With regard to Petitioner's argument about failing to object to the prosecutor's statement of "God bless you" during Mr. Campbell's testimony, the state court found that when this statement was read in context, it made no logical sense to view it as prosecutorial misconduct and in all likelihood, someone probably sneezed during the questioning of the witness.  *Id.*

The state court also found Petitioner's allegations regarding trial counsel's failure to present a viable defense to be contradicted by the record since counsel specifically stated that Petitioner was not present at the shooting during her summation.  *Id.*  Petitioner's argument regarding counsel's failure to move to dismiss the indictment was also rejected.  Though Petitioner argues that the return of the indictment against him was tainted because the grand jury was led to believe that two people, Matthew Campbell and Lamont Henderson identified Petitioner, Detective Maldonado in fact read the statements of the two witnesses to the grand jury, and Lamont Henderson's statement did not identify Charles Merritt as being there and being a shooter.  *Id.*  As such, counsel's failure to move for a dismissal of the indictment was not ineffective assistance.  *Id.*

The state court found that Petitioner's argument that certain discovery was not produced until later, when it was too late for him to use it for his *Wade* hearing was merely speculative and he did not put forth any evidence to support that contention.  *Id.*  As such, Petitioner failed to meet the required burden of proofs under the *Strickland* test.  *Id.*  Petitioner argued that it was ineffective assistance for trial counsel not to inform the state court that Petitioner had written a letter regarding her performance to the Ethics Committee, however the state court found that no

such disclosure was necessary and the claim was without merit. *Id.* With regard to the failure to trial counsel to move to suppress statements made by Petitioner's brother and bullet fragment evidence, the state court found that it was not ineffective assistance as it is unlikely that it would have changed the outcome of the trial. *Id.*

The state court also rejected Petitioner's claims regarding appellate counsel. Specifically, the court found that appellate counsel was not ineffective for failing to raise all of the alleged errors by trial counsel because Petitioner had not shown any prejudice that resulted. *Id.* The court also found that appellate counsel was not ineffective for failing to raise the issue of merger in sentencing because said issue had been raised and rejected on direct appeal. *Id.*

In the instant petition, Petitioner has failed to establish that he is entitled to habeas relief on any of the ineffective assistance of counsel grounds. Even if this Court were to assume, *arguendo*, that Petitioner met the first prong of the *Strickland* test on any of the claims, Petitioner has failed to show any prejudice that resulted. The decisions of the state courts are neither contrary to nor an unreasonable application of, Supreme Court law. Habeas relief will be denied on these grounds.

**5. Sentence (Grounds Five, Seventeen, Eighteen, Twenty-Five, Thirty-Four, Thirty-Nine, Forty, Forty-One and Forty-Two,)**

In several grounds of the petition, Petitioner raises claims regarding his sentence. Specifically, in Ground Five, Petitioner argues that his sentenced was excessive. In Ground Seventeen, Petitioner argues that the trial court double-counted the aggravating factors. Petitioner alleges that the trial court's findings of fact were unconstitutional in Grounds Eighteen and Forty-Two. Petitioner argues that the trial court used "impermissible factors" to devise his

sentence in Grounds Twenty-Five and Forty-One.   In Ground Thirty-Four, Petitioner argues that

the trial court abused its discretion when it imposed a parole ineligibility term higher than one third

of the presumptive term.   Petitioner alleges in Ground Thirty-Nine that the sentencing court

improperly imposed a presumptive term which treated Petitioner as a persistent offender.   In

Ground Forty, Petitioner argues that the sentencing court improperly extended his sentence under

both the Graves Act and as a persistent offender.

Petitioner raised these issues on direct appeal and in his PCR petitions.   On direct appeal,

the court stated the following:

> Finally, we note that the extended term sentence for one of the attempted murder
> charges was imposed both as a persistent offender and under the Graves Act.   In
> the absence of a cross-appeal we do not address whether extended terms were
> required on all the Graves Act offenses. We find no basis for disturbing the
> sentence imposed.   However, although not raised, we feel compelled to add a
> comment about the enhanced sentence in light of *Apprendi v. New Jersey*, 530 U.S.
> _, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and the fact that defendant was
> acquitted of the weapons offenses.   Of course, the single extended term could be
> imposed against a persistent offender by virtue of the prior convictions.   *Apprendi*,
> *supra*, 147 L. Ed. 2d at 453-55.   However, because the enhanced sentence was
> imposed under the Graves Act, defendant had to have used or possessed a firearm
> incident to the offense for which defendant was being sentenced, and the use or
> possession of a firearm was not an element of attempted murder for which
> defendant was given an extended term.   Because the sentence was imposed on a
> persistent offender basis, we need not examine the Graves alternative at length but
> note, in any event, that the jury's determination that defendant committed a fourth
> degree aggravated assault by pointing a firearm at the victim of the attempted
> murder, satisfies the requirement for jury fact-finding necessary for the enhanced
> Graves Act sentence.

*State of New Jersey v. Merritt*, A-2648-98T4 (N.J. Super. Ct. App. Div. Sept. 28, 2000).

On PCR, the court found that:

> [t]he defendant-petitioner also alleges that the sentence received was illegal
> because the Court used facts outside the jury's findings to impose the extended term
> sentence, specifically that extended term applies in the interests of the public, and
> this was a violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v.
> New Jersey*, 530 U.S. 466 (2000).   In *Blakely*, the United States Supreme Court

held that a Washington sentence enhancing statute was unconstitutional, in that it violated the constitutional right to trial by jury by allowing the judge to make findings of fact, not contained in the jury's verdict, for the purpose imposing a term of imprisonment higher than the prescribed statutory maximum term. In essence, the Court affirmed and extended its ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and created a rule stating that any fact that increases the penalty for a crime above the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to the jury and proven beyond a reasonable doubt….

The New Jersey Appellate Division applied the *Blakely* decision to New Jersey law in *State v. Natale*, 373 N.J.Super. 226 (App. Div. 2004). The court in *State v. Natale*, 184 N.J. 458 (2005) determined that it would apply only "to defendants with cases on direct appeal as of the date of this decision, which was August 2, 2005) and to those defendant's [sic] who raised *Blakely* claims at trial or on direct appeal." *Natale* at 494. Defendant here was not on direct appeal at that time. Therefore, he is not entitled to a *Natale* remand.

*State of New Jersey v. Merritt*, 96-0221-03 (N.J. Super. Ct. Law Div. Nov. 28, 2006).

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). *See also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 62, 67.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (citations omitted). The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the

same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Additionally, Justice Kennedy has explained that *Solem* does not mandate comparative analysis within and between jurisdictions, *see Harmelin v. Michigan*, 501 U.S. 957, 1004–05, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review—"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"—that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," *id*. at 1001 (citation omitted).

Consequently, this Court finds that Petitioner's challenge to the state court's extended term sentencing is not reviewable in this Court; he has presented no cogent argument why his sentence is unconstitutional in this regard. This Court finds that Petitioner's sentence is not grossly disproportionate to the crime he committed. Indeed, extended sentences are common in the State of New Jersey and other states, and they are not contrary to legitimate penological schemes. Therefore, even if the Court were to read an Eighth Amendment argument into Petitioner's claims, it would not state a violation of federal constitutional limitations.

This Court concludes that the decisions of the sentencing court and of the Appellate Division were neither contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to relief on these grounds.

As to Petitioner's arguments regarding an alleged violation of his Sixth Amendment jury trial rights under *Apprendi* and *Blakely*, this Court finds no merit.   In *Apprendi v. New Jersey*, 530 U.S. 466, 471, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that pursuant to the Sixth Amendment right to trial by jury, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 302 (internal quotations omitted).

Here, Petitioner argues that the Supreme Court's decisions in *Apprendi* and *Blakely* invalidate his extended sentence.   That argument is unavailing.   Petitioner was sentenced to an extended term for one of the attempted murder charges both as a persistent offender and under the Graves Act.   *State of New Jersey v. Merritt*, A-2648-98T4 (N.J. Super. Ct. App. Div. Sept. 28, 2000).   To establish that Petitioner was subject to an extended sentence under the persistent offender statute, the state court took notice of Petitioner's prior convictions.   *Id.*   A court may take notice of prior convictions at sentencing.   *See Apprendi*, 530 U.S. at 490.   The Appellate Court further found that with regard to the Graves Act enhancement, "the jury's determination that defendant committed a fourth degree aggravated assault by pointing a firearm at the victim of the attempted murder, satisfies the requirement for jury fact-finding necessary for the enhanced Graves Act sentence."   *Id.*

Therefore, there is no indication that the state courts unreasonably applied established

federal law in reaching its decision, or that the state court decision was based on an unreasonable application of the facts in light of the evidence presented at trial. Petitioner has not demonstrated that the state courts' holdings, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *Matteo*, 171 F.3d at 891. As Petitioner was properly sentenced in accordance with state law, and where he has not provided this Court with any justification to grant habeas relief with respect to his sentence, these claims for habeas relief are denied.

**6. Failure to Enter Judgment of Acquittal (Ground Nine)**

In his ninth ground for relief, Petitioner argues that the trial court violated Rule 3:18-1 by failing to enter a judgment of acquittal because the evidence presented at trial was insufficient to support a conviction. As stated above, violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, relief on this ground denied.

**7. Prosecutorial Misconduct (Grounds Twelve, Nineteen, Twenty-Two and Thirty-Three)**

In Grounds Twelve, Nineteen, Twenty-Two and Thirty-Three, Petitioner argues that the prosecutor elicited testimony from witnesses during trial that had not been provided during discovery. Petitioner raised this argument in his PCR petition, where the claim was rejected.

> The State is not required to provide every little detail regarding what a witness will be testifying too. The fact that the witness described in more detail where he was when he identified the defendant when he was testifying did not prejudice the defendant, because the defense had previously been privy to the information regarding the identification of defendant made by the witness, Matthew Campbell. Therefore, defendant-petitioner is not entitled to relief on this claim.

*State of New Jersey v. Merritt*, 96-0221-03 (N.J. Super. Ct. Law Div. Nov. 28, 2006).

The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1967); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("A finding of materiality of the evidence is required under *Brady*."). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles v. Whitly*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Bagley*, 473 U.S. at 678).

As articulate by the state court, the prosecutor is not required to provide every detail regarding a witness' testimony. Petitioner was aware of the identification made by Matthew Campbell and the additional details he provided during his testimony did not prejudice Petitioner. Accordingly, this Court finds that the decision of the state court was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was the state court decision based upon an unreasonable determination of the facts in light of the evidence presented to it. Petitioner is not entitled to relief on these claims.

## 8. Newly Discovered Evidence (Ground Twenty-Seven)

In Ground Twenty-Seven, Petitioner argues that the state court erred when it failed to grant him an evidentiary hearing or new trial based on newly discovered evidence. Petitioner raised this claim in his PCR petition and it was rejected by the state courts.

Defendant also argues that the judge should have granted defendant an evidentiary

hearing (or a new trial) because new evidence exists that suggests Campbell has recanted his identification of defendant as one of the shooters. Defendant produced two certifications in support of his argument. The first certification is by defendant's father, who claims that "Campbell informed me that he was untruthful in his testimony during my son's trial. Campbell said he did not really see my son Charles at the shooting incident ... [he] told me he wanted to right this wrong that he had done." Defendant's father certifies he then took Campbell to the law offices of Thomas Cataldo. Campbell allegedly repeated the story again, with the attorney taking notes and warning Campbell that he could face criminal charges.

The second certification is by Karen J. Andrews, the attorney who represented defendant during PCR. She certified that she contacted Cataldo by phone and he indicated to her that Campbell "acknowledged in his presence that he had testified falsely in this matter insofar as he identified [defendant] as having been present at the scene of the shooting." According to Andrews, Cataldo refused to sign a certification because of a dispute over fees for the work he did on defendant's behalf. Andrews's attempt to locate Campbell were unsuccessful.

The State argues that only a certification by Campbell himself would qualify as "new evidence" that could give rise to a new trial. *State v. Ways*, 180 N.J. 171, 188 (2004) ("Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication[.]") We agree.

"[R]ecantation testimony is generally considered exceedingly unreliable" and "the sincerity of a recantation is to be viewed with 'extreme suspicion.'" *State v. Hogan*, 144 N.J. 216, 239 (1996) (alteration in original) (citation omitted). The party presenting such testimony has the burden of proving that the recantation "is probably true and the trial testimony probably false." *State v. Carter*, 69 N.J. 420, 427 (1976) (citing *State v. Baldwin*, 47 N.J. 379, 400, *cert. den.*, 385 U.S. 980, 87 S.Ct. 527, 17 L. Ed.2d 442 (1966)).

Here, defendant has not met the burden to prove that the recantation is "probably true." *Ibid.* All he has produced is a hearsay certification by an interested party and a double-hearsay certification by his attorney. This does not alleviate our "extreme suspicion." *Hogan*, *supra*, 144 N.J. at 239.

*State v. Merritt*. 2010 WL 5420149, at * 5 (N.J. Super. Ct. App. Div. April 06, 2010).

In *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the

Supreme Court noted that, unless an innocent person would be executed,

[c]laims ... based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.... This rule is grounded in the

principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact...

Petitioner in this case is simply not entitled to habeas relief.... For he does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. We have never held that it extends to freestanding claims of actual innocence.

*Herrera*, 506 U.S. at 400–405 (citations and internal quotation marks omitted).

Petitioner is not entitled to habeas relief on this ground because he has not shown that the New Jersey courts' adjudication of the claim was contrary to, or an unreasonable application of *Herrera* or other Supreme Court precedent. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (freestanding innocence claim based on newly discovered evidence is not cognizable in non-capital case under § 2254*); Zuern v. Tate*, 336 F.3d 478, 482 n. 1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding' ") (citation omitted).

**9. PCR Claims (Grounds Twenty-Nine, Thirty, Thirty-One, Thirty-Five, Thirty-Six and Thirty-Eight)**

Petitioner claims that his PCR counsel was ineffective for several reasons. He also asserts that it was error for the PCR court to deny an evidentiary hearing. Infirmities in a state PCR proceeding generally do not raise constitutional questions in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral

proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954. *See also* 28 U.S.C. § 2254(i) (the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). *But see Martinez v. Ryan*, —— U.S. ——, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012) (Supreme Court held that a prisoner may establish cause for the procedural default of an ineffective assistance of counsel claim by demonstrating that his or her counsel in an "initial-review collateral proceeding" provided ineffective assistance of counsel, thus creating a narrow exception to the rule set forth in *Coleman v. Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default.). Therefore, Petitioner's challenges based on denial of an evidentiary hearing and ineffectiveness of PCR counsel have no merit and are denied for failure to assert a violation of his federal rights.

**10.   Cumulative Errors (Grounds Ten and Fourteen)**

In Ground Ten, Petitioner argues that the cumulative errors by the trial court violated his constitutional rights. In Ground Fourteen, Petitioner argues that the cumulative effect of the errors by his trial counsel violated his rights.

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir.

2005) (relying on *Donnelly*, 416 U.S. at 643); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.' ").

As discussed above, this Court, along with the state courts, finds that there is no merit to Petitioner's claims for individual errors. As such, there is no basis or merit for habeas relief based upon an alleged accumulation of errors that did not exist.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.   An appropriate Order follows.

DATED: August 28, 2013

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge